```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
CALDWELL MANUFACTURING COMPANY
NORTH AMERICA, LLC,

                    Plaintiff,                      11-CV-6183T

v.                                                  DECISION
                                                    and ORDER
AMESBURY GROUP, INC.,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff Caldwell Manufacturing Company North America, LLC, ("Caldwell"), brings this action against defendant Amesbury Group, Inc. ("Amesbury"), claiming that Amesbury has infringed upon two patents owned by Caldwell: U.S. Patents 5,353,548 (the '548 patent) and 5,463,793 (the '793 patent). Both Caldwell and Amesbury are manufactures of hardware used in windows and doors, and the companies are direct competitors. The asserted patents generally disclose window balance systems that utilize a curl spring used in sash windows, including tilting sash windows.

Caldwell now moves the court for a preliminary injunction against Amesbury asking the court to prohibit Amesbury from infringing on the asserted patents. Caldwell contends that it will likely succeed on the merits of its infringement claims, and that it will be subjected to irreparable harm if the defendant is allowed to continue infringing the '548 and '793 patents. Amesbury opposes plaintiff's motion on grounds that plaintiff has failed to

establish that it will likely succeed on the merits or that it is subject to irreparable harm if an injunction is not issued. Amesbury further claims that because Caldwell has unreasonably delayed its request for injunctive relief, it is not entitled to such relief. For the reasons set forth below, I find that plaintiff has failed to establish that it is subject to irreparable harm in the absence of injunctive relief, and I therefore deny plaintiff's motion for a preliminary injunction.

## BACKGROUND

Plaintiff Caldwell Manufacturing Company North America, LLC is a manufacturer of hardware used in windows and doors. Caldwell's primary customers are commercial manufacturers of windows and doors. Defendant Amesbury Group, Inc. is the plaintiff's primary competitor. Together, the companies hold approximately an 80% share of the market for window and door hardware sold to commercial manufacturers.

According to the plaintiff, in an attempt to provide the best technology available, and to gain a competitive edge over its competitor Amesbury, Caldwell has continuously devoted significant time and financial resources to developing improved hardware for use in windows and doors. Caldwell claims that as a result of its research and development, it was awarded two patents, one in 1994 and one in 1995, for improved balance mechanisms to be used in sash windows. Balance mechanisms are used in sash windows to allow

window sashes to stay in place once opened, and to allow for easy, even lifting and lowering of window sashes. In older windows, actual weights connected to sashes via ropes were used to counterbalance window sashes. Later, mechanisms using curled springs were used to hold window sashes in place.

According to the specifications of the '548 and '793 patents, curled spring mechanisms suffered from several drawbacks, including the fact that they could not be used in tilting windows if the mechanisms were placed in the window sash, and they took up excessive space if they were placed in the window shoe. The '548 and '793 patents claimed to solve these problems by disclosing a curled spring counterbalance mechanism that could be mounted in the sash shoe, that would allow the window sash to tilt, and did not take up excessive space. See U.S. Patent 5,353,548 entitled "Curl Spring Shoe Based Window, Balance System" and U.S. Patent 5,463,793 Entitled "Sash Shoe System for Curl Spring Window Balance." The disclosed inventions also claimed to be superior to previous curled spring designs by reducing friction, noise and wear, and preventing dirt and dust from contaminating the disclosed mechanisms.

According to Caldwell, in September, 2010, a Caldwell employee attending a trade show observed hardware made by Amesbury that appeared to infringe on Caldwell's '548 and '793 patents. Amesbury was allegedly displaying the hardware to prospective customers, and was providing literature to prospective customers about its new

hardware. Thereafter, Caldwell received samples of Amesbury's hardware, and determined that it infringed the asserted patents. On April, 11, 2011, Caldwell filed the instant infringement action, and by Amended Motion dated June 23, 2011, moves for a preliminary injunction, asking the court to prevent Amesbury from infringing the '548 and '793 patents. Presumably Caldwell seeks an order prohibiting Amesbury from manufacturing or selling hardware that infringes the asserted patents. Amesbury opposes plaintiff's motion contending that the asserted patents are invalid, and that plaintiff has failed to establish that it will likely succeed on the merits, or that it is subject to irreparable harm absent issuance of an injunction. Amesbury also alleges that Caldwell has unreasonably delayed its request for injunctive relief.

## DISCUSSION

### I. Standard of Review

For a party to be entitled to a preliminary injunction, the party must demonstrate: (1) that it is subject to irreparable harm; and (2) that it will either likely succeed on the merits of the case, or that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of the hardships between the parties weighs decidedly in favor of the party requesting the relief. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2nd Cir. 1979). A preliminary injunction is "extraordinary relief," and a

"patentee's entitlement to such an injunction is a matter largely within the discretion of the trial court." <u>Titan Tire Corp. v. Case New Holland, Inc.</u>, 566 F.3d 1372, 1375 (Fed.Cir.2009); <u>The Research Foundation of State University of New York v. Mylan Pharmaceuticals Inc.</u>, 723 F.Supp.2d 638, 646 (D.Del.,2010)

II. <u>Irreparable Harm</u>

A. Standard for establishing Irreparable Harm in a Patent <u>Action</u>.

Historically, in a patent infringement action, a plaintiff seeking a preliminary injunction could establish irreparable harm by making a strong showing that its patent had been infringed. <u>H.H. Robertson, Co. v. United Steel Deck, Inc.</u>, 820 F.2d 384, 390 (Fed. Cir., 1987)("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.") In 2006, however, the United States Supreme Court held that even in cases where infringement has been proven on the merits, for purposes of considering a permanent injunction, there is to be no automatic presumption that the infringement has caused irreparable harm. <u>eBay Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 392-94 (2006). The Federal Court of Appeals has adopted this reasoning for preliminary injunctions as well, holding that even where a strong showing of infringement has been made, "[t]he burden is now on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages." <u>Automated Merch. Sys. v. Crane Co.</u>, 357 Fed.Appx. 297,

301 (Fed.Cir.2009). As a result, courts no longer apply any presumption of irreparable harm in cases where a patentee seeking a preliminary injunction has demonstrated a likelihood of success on the merits: i.e. made a clear showing of infringement. FieldTurf USA, Inc. v. Astroturf, LLC, 725 F.Supp.2d 609, 616-617 (E.D.Mich., 2010)(citing cases in which courts have declined to apply presumption of irreparable harm); The Research Foundation of State University of New York, 723 F.Supp.2d at fn. 17, (D.Del.,2010)("as many courts have recognized, 'irreparable harm can no longer be presumed'")(quoting Albany Molecular Research, Inc. v. Dr. Reddy's Labs., Ltd., 2010 WL 2516465, at *10 (D.N.J. June 14, 2010).

In patent cases, to establish irreparable harm for purposes of obtaining a preliminary injunction, the patent holder must establish that he or she is subject to harm that can not be adequately compensated for by the payment of money damages, or that monetary damages may be difficult to ascertain. MicroAire Surgical Instruments, LLC v. Arthrex, Inc., 726 F.Supp.2d 604, 634 (W.D.Va., 2010)(citing Canon, Inc. v. GCC Int'l, Ltd., 263 Fed.Appx. 57, 62 (Fed.Cir.2008). See also Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, 708 F.Supp.2d 527, 532 (D. Md., 2010) ("proof of irreparable harm requires a showing that damages will be inadequate.") Although a patent owner seeking a preliminary injunction may claim irreparable harm due to the fact that the

right to exclude others from use of the invention is lost if the alleged infringement is allowed to continue, the Federal Circuit has clearly stated that there is no presumption in a patent case that monetary damages will not adequately compensate the patent holder. Nutrition 21 v. United States, 930 F.2d 867, 871-72 (Fed.Cir.1991) ; MicroAire Surgical Instruments, LLC, 726 F.Supp.2d at 635. Indeed, "[p]roof of lost market share and lost sales alone are insufficient to establish irreparable harm . . . ." FieldTurf USA, Inc., 725 F.Supp.2d 609,  fn. 3(citing Automated Merch. Systems, Inc., 357 Fed.Appx. at 301; Mike's Train House, Inc., 708 F.Supp.2d at 532 ("Because potential lost sales revenue is compensable through damages, evidence of such losses is insufficient by itself to support a finding of irreparable harm.")(citing Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679 (Fed.Cir., 1990)).

Accordingly, a patent holder seeking a preliminary injunction must establish, by admissible evidence, that absent issuance of the injunction, the patentee would likely suffer such harms as loss of good will, price erosion, or significant immediate harms such as laying off employees, or collapse of market presence. See Sanofi-Synthelabo v. Apotex Inc., 488 F.Supp.2d 317 (S.D.N.Y., 2006)(evidence of irreversible price erosion, loss of good will, and forced layoffs in absence of injunctive relief established irreparable harm); The Research Foundation of State University of

New York, 723 F.Supp.2d 638 (evidence that holder of pharmaceutical patent would experience price erosion and lost profits if generic version of patented drug was allowed onto the market sufficiently established claim of irreparable harm); Bushnell Inc. v. Brunton Co., 673 F.Supp.2d 1241, 1262 (D. Kan., 2009)(because damages for loss of market share and price erosion may be difficult to quantify, proof of such losses state claim of irreparable harm).

The party seeking injunctive relief bears the burden of proving that it is entitled to such relief, and must do so with evidence, and may not rely on vague claims of potential harm. Quad/Tech, Inc. v. Q.I. Press Controls B.V., 701 F.Supp.2d 644, 655 (E.D.Pa., 2010)(citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92 (3d Cir.1992). Accordingly, a claim that a party is subject to the possibility of price erosion, without actual proof, will fail to establish irreparable harm.; Mike's Train House, Inc., 708 F.Supp.2d at 532 ("Mere speculation about possible market share losses is insufficient evidence of irreparable harm."); Z-Man Fishing Products, Inc. v. Renosky, 2011 WL 1930636, *2 (D. S.C., May 17, 2011)(no proof of irreparable harm where party failed to establish "any evidence of lost goodwill, loss of market share, or price erosion."); FieldTurf USA, Inc., 725 F.Supp.2d 609 at fn.3.

Finally, a defendant may rebut a plaintiff's claim of irreparable harm by demonstrating that the plaintiff unreasonably delayed seeking a preliminary injunction. Pfizer, Inc. v. Teva

Pharmaceuticals, USA, Inc., 429 F.3d 1364, 1381 (Fed.Cir.2005); High Tech Medical Instrumentation v. New Image Indus., 49 F.3d 1551, 1557 (Fed.Cir.1995); Quad/Tech, Inc., 701 F.Supp.2d at 656; Capital Machine Co., Inc. v. Miller Veneers, Inc., 2010 WL 3000769, *1 (S.D. Ind., July 28, 2010); Bushnell, 673 F.Supp.2d at 1264 ("A finding that the patentee delayed in seeking a preliminary injunction strongly suggests that the patentee does not face irreparable harm.")(citing Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557-59 (Fed.Cir.1994))

    B.    Plaintiff has failed to establish that it will likely suffer irreparable harm if an injunction is not issued.

Caldwell claims that because it and Amesbury are direct competitors in the window hardware business, and because the two companies control approximately 80% of the market, Amesbury's alleged infringement constitutes irreparable harm because it robs Caldwell of the benefit of its superior, patented product, and will cause Caldwell to lose market share and customers. Caldwell claims that because many sales of hardware in the industry are bundled, and contain several different pieces of hardware, it will be difficult or impossible to ascertain how many of Amesbury's sales were induced by its offering of allegedly infringing products. Caldwell further alleges that Amesbury's alleged infringement "has caused and threatens to cause" erosion of goodwill, and "threatens to cause price erosion." Plaintiff's Memorandum of Law in Support of Motion for Preliminary injunction at p. 22.

The only evidence of irreparable harm submitted by plaintiff in support of its motion for a preliminary injunction,[1] is a statement from John Kessler ("Kessler"), the Vice President of Sales and Marketing for Caldwell, who contends that:

> If . . . customers purchase infringing Amesbury products, Amesbury will displace Caldwell's products and Caldwell will lose market share. Because many customers purchase a mix of products from each supplier, it is difficult or impossible to estimate how much this loss of market share will harm Caldwell's sales of other products. It is also impossible to determine the long-term harm Amesbury is causing by unfairly undermining Caldwell's relationships with its customers.

June 21, 2011 Declaration of John Kessler at ¶ 18.

Such a claim, however, is not only speculative (in that the harms will occur *if* customers purchase infringing Amesbury products) but also fails to establish, by admissible evidence that Caldwell will likely suffer irreparable harm if a preliminary injunction is not issued. The conclusory allegations are

---

[1] Plaintiff did, in it Reply to Defendant's Opposition to Caldwell's motion for a preliminary injunction, submit additional evidence of irreparable harm, in the form of an Affidavit of Caldwell's President, Eric Mertz, who suggested that absent issuance of a preliminary injunction: (1) Caldwell's sales of both its patented products and other products would likely be diminished; (2) Caldwell's position as an innovator, and associated good will would be undermined; and (3) Amesbury will steal Caldwell customers by using technology patented by Caldwell. Mertz also claims that discovery and trial of this matter will also irreparably harm Caldwell. These claims are speculative, and claims regarding harms resulting from discovery and trial do not establish that a preliminary injunction should be issued, as a preliminary injunction would neither prohibit discovery nor prevent a trial from occurring in this action.

unsupported by any evidence, and as such, cannot establish irreparable harm. See e.g., Z-Man Fishing Products, 2011 WL 1930636, *2 (denying preliminary injunction where plaintiffs had "not shown the Court any evidence of lost goodwill, loss of market share, or price erosion."); Mike's Train House, 708 F.Supp.2d at 533 (company president's beliefs that company would lose its goodwill and reputation as an innovator unsupported by evidence, and therefore failed to establish likelihood of irreparable harm); FieldTurf USA, Inc., 725 F.Supp.2d at 617 (no finding of irreparable harm where plaintiff "offered no admissible evidence of economic harm"); Tech-Wear, Inc. v. Acme Laundry Products, Inc., 38 F.Supp.2d 1147, 1151 (C.D. Cal., 1998); Automated Merch. Sys., Inc., 357 F.App'x at 301 ("lost market share must be proven (or at least substantiated with some evidence) . . . to support entry of a preliminary injunction"); Voile Mfg. Corp. v. Dandurand, 551 F.Supp.2d 1301, 1307 (D. Utah 2008)("Courts require more than unsupported factual conclusions to support . . . a finding [of a likelihood of irreparable harm].")

Nor is it clear that damages could not be determined to a reasonable degree of certainty. Although the plaintiff alleges that the bundling of allegedly infringing products with noninfringing products makes it difficult to discern what amount of sales, if any, were induced by the defendant's offering of allegedly infringing products, there is no dispute that the sales

figures of the allegedly infringing products themselves can be ascertained. Whether sales of infringing products spurred sales of non-infringing products is an issue that can be explored in discovery.

Plaintiff alleges that it has demonstrated irreparable harm because it has made a strong showing of infringement, and because the parties are the two largest competitors in the market for window hardware, and together control approximately 80% of the market. Caldwell contends that when a direct competitor is the alleged infringer, courts have recognized that the harm to the patent holder is particularly egregious, and warrants a finding that the patentee is subject to irreparable harm. See TruePosition Inc. v. Andrew Corp., 568 F.Supp.2d 500, 532 (D. Del., 2008)(where plaintiff and defendant were the only suppliers in a two-supplier market, upon finding by jury that defendant had infringed plaintiff's patent, it was clear that "defendant's infringement . . . necessarily affected plaintiff's market position."); Muniauction, Inc. v. Thomson Corp., 502 F.Supp.2d 477, 482 (W.D. Pa. 2007)(holding that in two-supplier market, following trial at which infringement was found, inability to prevent direct competitor from continued infringement of patent rendered patent worthless as a means of exclusively offering technologically superior product) reversed on other grounds, 532 F.3d 1318 (Fed.Cir., 2008); Johns Hopkins University v. DataScope Corp., 513

F.Supp.2d 578, 586 (D. Md., 2007), reversed on other grounds, 543 F.3d 1342 (Fed.Cir., 2008).

Notably, all of the cases cited by the plaintiff for the proposition that "a court will almost certainly find irreparable harm where the infringer and the patent holder are the sole competitors in a two-company market" (Plaintiff's Memorandum of Law in Support of Motion for Preliminary injunction at p. 21) are cases in which the issue of infringement went to trial, and a finding of infringement was made by the trier of fact after a full trial on the merits.[2] Plaintiff has not cited a single case in which the mere fact that the parties are direct competitors established that a patent holder would be subject to irreparable harm if its competitor were allowed to continue selling or using the allegedly infringing product before the plaintiff proved (or made a substantial showing) that its product had been infringed.[3]

---

[2] Indeed the three other cases cited by plaintiff in support of its contention that "courts are particularly apt to find irreparable harm where the patent holder and the alleged infringer are direct competitors" (Plaintiff's Memorandum of Law in Support of Motion for Preliminary injunction at p. 20) are also cases where a finding of infringement had been made after trial, or after consideration of motions for summary judgment. See Atlanta Attachment Co. v. Leggett & Platt, Inc., 2007 WL 5011980 (N.D. Ga., 2007)(infringement found on motion for summary judgment); Novozymes A/S v. Genencor Intern., Inc., 474 F.Supp.2d 592 (D. Del., 2007)(infringement found upon conclusion of bench trial); MGM Well Services, Inc. v. Mega Lift Systems, LLC, 505 F.Supp.2d 359 (S.D.Tex., 2007)(infringement found upon conclusion of bench trial).

[3] One recent opinion, decided after plaintiff filed its motion for a preliminary injunction, suggests that a plaintiff

Indeed, contrary to plaintiff's argument, when considering entitlement to a preliminary injunction (as opposed to a permanent injunction) courts have rejected any presumption that a direct competitor suffers irreparable harm from alleged infringement by its direct competitor. See Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp., 712 F.Supp.2d 1285, 1289-90 (M.D. Fla., 2010) citing MercExchange, L.L.C. v. eBay, Inc., 500 F.Supp.2d 556, 577 (E.D. Va., 2007)("decisions subsequent to the Supreme Court's opinion [in eBay] have rejected the broad classification that direct competitors always suffer irreparable harm from infringement"); Generac Power Systems Inc. v. Kohler Co., --- F.Supp.2d ----, 2011 WL 2648596 at *11-12 (E.D. Wis., July 5, 2011)(where plaintiff relied "only upon its status as a direct competitor" of defendant, and failed to submit evidence that lost market share resulted from defendant's alleged infringement, plaintiff failed to establish irreparable harm).

Additionally, courts have found that where there are only two competitors in a given market, the absence of other competitors militates against issuing a preliminary injunction. See Cummins-

---

may be able to establish irreparable harm for purposes of seeking a preliminary injunction where it has demonstrated a likelihood of success on the merits, and the alleged infringer is a direct competitor of the plaintiff. See Arlington Industries, Inc. v. Bridgeport Fittings, Inc., 2011 WL 2927817 at *8-10 (M.D. Pa., July 18 2011). This court has not found any additional cases, decided after the Supreme Court's decision in eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006) in which direct competition alone satisfied a showing of irreparable harm.

Allison Corp. V. Glory Ltd., 2003 WL 355470 at *52 (N.D. Ill., Feb. 12, 2003)(preliminary injunction against one supplier in two-supplier market would be against public interest); MMJK Inc. v. Ultimate Blackjack Tour LLC, 513 F.Supp.2d 1150, 1157 (N.D. Cal., 2007)(presence of only two competitors in market suggests that any lost market share would be recoverable, and monetary damages would sufficiently compensate plaintiff's damages if plaintiff prevailed).

In this case, because the plaintiff has only speculated as to the damages it may suffer from defendant's continued alleged infringement, and has failed to submit evidence of actual lost sales, lost market share or lost goodwill, or evidence demonstrating that such harms are likely, I find that plaintiff has failed to establish that it is subject to irreparable harm absent issuance of a preliminary injunction.

    C.    Remaining Issues

Because the plaintiff has failed to establish that it is subject to irreparable harm if a preliminary injunction is not issued, the court need not determine whether or not plaintiff will likely succeed on the merits of its claim of infringement. McDavid Knee Guard, Inc. v. Nike USA, Inc., 683 F.Supp.2d 740, 744 (N.D. Ill., 2010)("If the moving party fails to demonstrate either [likelihood of success or irreparable harm], then a district court considering a motion for preliminary injunction need not proceed

further with its analysis to deny the preliminary injunction motion.")(citing <u>Abbott Laboratories v. Sandoz, Inc.</u>, 544 F.3d 1341, 1366-67 (Fed. Cir., 2008); <u>Perfect 10, Inc. v. Google, Inc.</u>, --- F.3d ----, 2011 WL 3320297 at fn. 3 (9th Cir., August 03, 2011); <u>Silver Leaf, LLC. v. Tasty Fries, Inc.</u>, 51 Fed.Appx. 366, 371 (3rd Cir., 2002). <u>Powell v. Home Depot U.S.A., Inc.</u>, 2009 WL 3855174 at *12 (S.D.Fla., November 17, 2009)("Because Plaintiff failed to prove likelihood of success on the merits, this Court need not discuss . . . irreparable harm . . . .") Accordingly, I decline to consider whether the plaintiff would likely succeed on the merits of its infringement claims; whether the balancing of hardships favors one party or another; or whether the public's interest is served by issuance of preliminary relief.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for a preliminary injunction is denied.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED: Rochester, New York
August 11, 2011